**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

```
-----------------------------------------------------------
WILLIAM McGILL, Individually and on          :
Behalf of All Others Similarly Situated,     :
                                             :
                                             :   CIVIL ACTION NO. 1:15-cv-00217
              Plaintiff,                     :
                                             :
                                             :   CLASS ACTION COMPLAINT FOR
       v.                                    :   BREACH OF FIDUCIARY DUTY
                                             :
RALPH HAKE, DAVID F. MELCHER, JOHN           :   JURY TRIAL DEMAND
J. HAMRE, PAUL J. KERN, HERMAN E.            :
BULLS, PATRICK MOORE, MARK L.                :
REUSS, ROBERT DAVID YOST, BILLIE I.          :
WILLIAMSON, HARRIS CORPORATION,              :
and HARRIS COMMUNICATION                     :
SOLUTIONS (INDIANA), INC.,                   :
                                             :
              Defendants.                    :
-----------------------------------------------------------  :
```

**PLAINTIFF'S CLASS ACTION COMPLAINT**

1.      Plaintiff William McGill ("Plaintiff"), by his attorneys, brings the following

class action on behalf of herself and all shareholders of Exelis Inc. ("Exelis" or the "Company"),

other than Defendants (defined below) and their affiliates, against certain officers and members

of Exelis' board of directors (the "Board" or the "Individual Defendants"), Harris Corporation

("Harris"), and Harris Communication Solutions (Indiana), Inc. ("Merger Sub") for breaching

their fiduciary duties in connection with Harris' proposed acquisition of all the outstanding stock

of Exelis (and/or aiding and abetting thereof).  The allegations in this Complaint are based on

information and belief, including the investigation of counsel and review of publicly-available

information, except for Plaintiff's own acts, which are alleged on personal knowledge.

## INTRODUCTION

2.      Exelis is an Indiana corporation headquartered in McLean, Virginia. The Company is a diversified, global aerospace, defense and information solutions company. Its operations include networked communications, sensing and surveillance, electronic warfare, air traffic management and information systems with growing positions in cyber security, composite aerostructures, logistics and technical services.

3.      On February 5, 2015, Exelis and Harris announced that they had entered into a definitive Agreement and Plan of Merger (the "Merger Agreement") under which Harris will acquire all outstanding shares of Exelis (the "Proposed Transaction"). Pursuant to the Merger Agreement, Exelis shareholders will receive consideration equal to $16.625 in cash and 0.1025 Harris common shares (the "Merger Consideration") for each share of the Company's common stock they own. The Merger Consideration represents a value of $23.75 per share for Exelis common stock. The Proposed Transaction has an enterprise value of $4.75 billion and is expected to close in June, 2015. Upon closing, Harris shareholders will own approximately 85 percent of the combined company, and Exelis shareholders will own approximately 15 percent.

4.      As described below, both the Merger Consideration that Exelis shareholders stand to receive and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and all other public shareholders of the Company.

5.      Exelis' stock price has increased by an impressive 83% over the past two years.[1] And while the entire defense industry has searched for new growth opportunities as U.S. military

---

[1]      Calculated based upon the Company's February 26, 2013 closing price of $9.60 and its February 3, 2015 closing price of $17.62.

spending stagnates, Exelis has nonetheless recently won several lucrative contracts with the U.S. military, which stand to drive the Company's financial performance in the coming months and years.

6.      The Merger Consideration is particularly inadequate in light of the significant benefits Harris will enjoy as a result of the Proposed Transaction.  Indeed, analysts from Raymond James noted that the deal "will propel Harris into the upper leagues of defense contractors."[2]  And while Harris has announced that it expects the Proposed Transaction to be "slightly accretive" in the first year and a "significant contributor thereafter" based on anticipated cost savings of $100-$120 million, analysts suspect that Harris has understated the potential synergies of the deal.[3]

7.      Exelis' strong ties with the National Aeronautics and Space Administration ("NASA"), the U.S. Navy, Air Force, and the North Atlantic Treaty Organization ("NATO") will also help open up new opportunities for Harris.  And with networks of customers in the U.K. and North Asia, Exelis also brings an extended geographical reach to Harris at a time when U.S. military spending is on the decline.  As one industry expert stated, "Exelis has very valuable franchises that reach beyond what Harris customarily does in defense…the price was reasonable compared with what many other defense contractors are selling for these days."[4]

8.      In addition to failing to obtain fair consideration for the Company's shareholders, The Individual Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock

---

[2]      Ben Levisohn, *Harris Buys Exelis: Gamechanger?*, BARRON'S, February 6, 2015, http://blogs.barrons.com/stockstowatchtoday/2015/02/06/harris-buys-exelis-gamechanger/.

[3]      *Id.*

[4]      Wayne T. Price, *Analysts: Acquisition makes Harris stronger*, FLORIDA TODAY, February 10, 2015, http://www.floridatoday.com/story/news/local/2015/02/09/analysts-acquisition-makes-harris-stronger/23142917/.

up the Proposed Transaction with deal protection devices that unfairly favor Harris and discourage other potential bidders from submitting a superior offer for the Company.  These preclusive devices include: (i) a non-solicitation provision that restricts the Board from soliciting other potentially superior offers; (ii) an "information rights" provision, which provides Harris with unfettered access to information about other potential proposals, gives Harris four business days to negotiate a new deal with Exelis in the event a competing offer emerges, and provides Harris with the perpetual right to attempt to match any superior bid; and (iii) a termination fee of $138.4 million if the Merger Agreement is terminated in connection with the Company entering into a definitive agreement with respect to a superior proposal, which may be reduced to $57.6 million if certain requirements are met and the Merger Agreement is terminated prior to March 7, 2015.

9.      These deal-protection provisions conjunctively and improperly deter other offers for the Company and restrain the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives to the Proposed Transaction.  Indeed, one analyst stated that "Harris [is] unlikely to face competitor[s] in [a] bid for Exelis as most would-be defense bidders are 'fairly conservative,' [and] unlikely to get involved in [a] public contest."[5]

10.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, good faith, and due care.

---

[5]      Rachel Layne, *Alternate Exelis Bid Unlikely as Defense Mkt Isn't 'Frothy': RBC*, BLOOMBERG, February 6, 2015, https://www.bloomberglaw.com/document/NJCWWA6TTDS9.

## JURISDICTION AND VENUE

11.     Plaintiff is a resident of Georgia and no defendant is a resident of Georgia.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the Defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Given that the Proposed Transaction is valued at $4.75 billion, the injunctive relief sought herein will exceed a sum or value of $75,000.  This action is not a collusive one to confer jurisdiction in this Court.

12.     Venue is proper in this Court pursuant to the Amended and Restated By-Laws of Exelis Inc., §14, which designates this Court as the sole and exclusive federal forum for adjudication of actions of this nature.

13.     Personal jurisdiction exists over each Defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.  The Individual Defendants have also agreed to submit to the jurisdiction of this Court pursuant to the Amended and Restated By-Laws of Exelis Inc., §14, which designates this Court as the sole and exclusive federal forum for adjudication of actions of this nature.

## PARTIES

14.     Plaintiff is, and has been at all relevant times, the owner of Exelis shares and has held such shares since prior to the wrongs complained of herein.  Plaintiff is a citizen of Georgia.

15.     Defendant Ralph Hake is Chairman of the Board, and has been an Exelis director since the Company's launch.  Hake is a citizen of California.

16.    Defendant David F. Melcher has been the Chief Executive Officer and President of Exelis since the Company's launch.  Melcher is also a director of the Company.  Melcher is a citizen of Virginia.

17.    Defendant John J. Hamre has been an Exelis director since the Company's launch. Hamre is a citizen of Washington, D.C.

18.    Defendant Paul J. Kern has been an Exelis director since the Company's launch. Kern is a citizen of Virginia.

19.    Defendant Herman E. Bulls has been an Exelis director since early November 2011.  Bulls is a citizen of Virginia.

20.    Defendant Patrick Moore has been an Exelis director since early November 2011. Moore is a citizen of Missouri.

21.    Defendant Mark L. Reuss has been an Exelis director since early November 2011. Reuss is a citizen of Michigan.

22.    Defendant Robert David Yost has been an Exelis director since early November 2011.  Yost is a citizen of Pennsylvania.

23.    Defendant Billie I. Williamson has been an Exelis director since January 2012. Williamson is a citizen of Texas.

24.    Defendant Harris is a Delaware corporation with its corporate headquarters in Melbourne, Florida.  Harris is an international communications equipment company focused on product, system, and service solutions.  The company provides a range of mission critical communications products, systems and services for global markets, including defense communications and electronics, government communications, broadcast communications and

wireless transmission network solutions.  Harris common shares trade on the New York Stock Exchange under the symbol "HRS".

25.     Merger Sub is an Indiana corporation and a wholly-owned subsidiary of Harris, and was created for purposes of effectuating the Proposed Transaction.

26.     The Individual Defendants, Harris and Merger Sub are collectively referred to as the "Defendants."

## THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

27.     By reason of the Individual Defendants' positions with the Company as directors and/or officers, said individuals are in a fiduciary relationship with Plaintiff and the other public shareholders of Exelis and owe Plaintiff and the other members of the Class the duties of care, loyalty, and good faith.

28.     By virtue of their positions as directors and/or officers of Exelis, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Exelis to engage in the practices complained of herein.

29.     Each of the Individual Defendants is required to act in good faith and with due care and loyalty.  To diligently comply with these duties, the directors of a corporation may not take any action that:

    a.     Adversely affects the value provided to the corporation's shareholders;

    b.     Contractually prohibits them from complying with or carrying out their fiduciary duties;

    c.     Discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

    d.     Will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders.

30.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other public shareholders of Exelis, including their duties of loyalty, good faith, and care.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action on his own behalf and as a class action pursuant to Federal Rules of Civil Procedure Rule 23, on behalf of all holders of Exelis common stock who are being and will be harmed by Defendants' actions described below (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

32.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of October 28, 2014 there were over 186 million shares of Exelis common stock outstanding.   The holders of these shares are believed to be geographically dispersed through the United States;

b.     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

i.     Whether the Individual Defendants have breached their fiduciary duties of loyalty, independence, or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

ii.     Whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

iii.     Whether Harris and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty;

8

   iv.  Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

   v.  Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

 c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

 d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

 e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

 f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

 33. On February 6, 2015 Exelis and  Harris issued a press release announcing the Proposed Transaction, which states in relevant part:

> MELBOURNE, Fla. & MCLEAN, Va.--(BUSINESS WIRE)--Feb. 6, 2015-- Harris Corporation (NYSE:HRS) and Exelis, Inc. (NYSE:XLS) today announced a definitive agreement under which Harris will acquire Exelis in a cash and stock transaction valued at $23.75 per share, or an approximately $4.75 billion enterprise value. The agreement has been unanimously approved by the Boards of Directors of both companies. The transaction is expected to close in June 2015 and is subject to customary closing conditions, including regulatory and Exelis shareholder approval.

Under the terms of the transaction, Exelis shareholders will receive $16.625 in cash and 0.1025 of a share of Harris common stock, based on Harris' closing price as of February 5, 2015, for each share of Exelis common stock. Upon closing, Harris shareholders will own approximately 85 percent of the combined company, and Exelis shareholders will own approximately 15 percent. On a pro forma basis for the latest twelve months ended December 31, 2014, the combined company would have had more than $8 billion in revenue and about 23,000 employees globally, including 9,000 engineers and scientists.

"Acquiring Exelis is transformational for Harris," said William M. Brown, chairman, president and chief executive officer of Harris. "The combination of the two companies' highly complementary core franchises creates a competitively stronger company with significantly greater scale. We are expanding in a market where we have decades of success and a workforce dedicated to providing our customers with innovative and cost-effective solutions for some of their most complex challenges."

"This agreement to become part of Harris Corporation represents an exciting new chapter for Exelis," said David F. Melcher, chief executive officer and president of Exelis. "Combining the companies not only creates shareholder value, but the commitment to excellence and innovation that both companies share will significantly benefit customers and provide new opportunities for employees."

Melcher also noted, "Our 2014 was another strong year, and we expect to report revenue of approximately $3.25 billion and adjusted operating margin between 12.4 and 12.5 percent, which is in line with our previous guidance." Exelis indicated that approximately $25 million of its anticipated free cash flow for 2014 shifted into 2015 due to some delayed collections, but that its estimate for 2015 free cash flow is being increased to approximately $275 million. Exelis also expects depreciation and amortization of approximately $106 million in 2014, net debt of $139 million and a net unfunded pension liability of approximately $1.9 billion at the end of 2014. Exelis ended the year with an estimated $2.8 billion in funded backlog.

**Financial highlights**

Based on an expected June 2015 closing, the transaction is expected to be slightly accretive to Harris in the first full year and a significant contributor thereafter. Harris has identified estimated net pre-tax cost synergies from the combination in a range of $100 million to $120 million, with savings expected to achieve annual run-rate in year three. Savings are expected from consolidating headquarters and eliminating public company costs and from operational and functional efficiencies.

Harris has secured $3.4 billion of fully committed bridge financing from Morgan Stanley Senior Funding, Inc. and expects to put in place permanent financing in

the form of term loans and unsecured bonds prior to closing. Following the transaction, Harris expects to continue to have a solid balance sheet supported by strong free cash flow from the combined business, enabling it to pay down debt rapidly.

**Integration plan**

Harris has developed a detailed execution plan to ensure seamless integration and achieve identified cost synergies. The dedicated integration team will have executive leadership and be comprised of senior members of both organizations. Harris is confident in its ability to effectively combine these two companies and provide the organizational alignment to achieve full strategic value.

**Advisors**

Morgan Stanley & Co. LLC is acting as financial advisor to Harris Corporation and Sullivan & Cromwell LLP is serving as principal legal counsel. J.P. Morgan Securities LLC is acting as financial advisor to Exelis, and Jones Day is serving as legal counsel.

34.   As discussed below, the $23.75 per share implied value of the Merger Consideration Exelis' public shareholders stand to receive is insufficient, as it fails to account for the Company's significant future earning potential and falls below the premium other defense contractors have recently sold for.

**B.    The Merger Consideration Is Inadequate In Light Of Exelis' Strong Background & Promising Financial Prospects**

35.   Exelis provides command, control, communications, computers, intelligence, and surveillance and reconnaissance (C4ISR) related products and systems in the United States and internationally. The Company's C4ISR Electronics and Systems segment offers intelligence, surveillance, and reconnaissance systems; integrated electronic warfare systems; electronic attack and release systems, including aircraft-armament suspension and release equipment, weapons interface systems, and surveillance aircraft and unmanned aerial vehicles.  This segment also provides radio frequency and acoustic surveillance sensors, integrated radar and precision air traffic control surveillance systems, electronic warfare and signals intelligence

systems, and mine sweeping systems; and tactical, mobile satellite, wireless, special mission, mobile ad hoc networking systems, as well as integrated command, control, and communications solutions.   In addition, it offers night vision products; positioning, navigation, and timing systems; and aerospace assembly structures, and sub-assemblies and components.   The Company's Information and Technical Services segment provides systems integration, network design and development, air traffic management, cyber, intelligence, operations, sustainment, engineering, and space launch and range-support solutions.   Exelis serves the U.S. Department of Defense and its prime contractors, U.S. Government intelligence agencies, NASA, the Federal Aviation Administration, the U.S. Army, Navy, Marines and Air Force, and allied foreign governments, and commercial customers.

36.   The Company was formerly known as ITT DCO, Inc. ("ITT").   In 2011 ITT announced that it planned to separate into three independent publicly traded companies by the end of the year.   On October 31, 2011 Exelis became a publicly traded company incorporated under the laws of Indiana and headquartered in McLean, Virginia.

37.   On September 27, 2014, Exelis completed the spin-off of its former Mission Systems business division into a separate, publicly traded company (the "Spin-Off"), Vectrus, Inc. ("Vectrus"). Vectrus was launched as a provider of infrastructure asset management, information technology and network communication services, and logistics and supply chain management.   At the time of the Spin-Off, existing Exelis shareholders owned all of the common shares of Vectrus, with each Exelis shareholder receiving one share of Vectrus common stock for every eighteen shares of Exelis stock held as of September 18, 2014, the Spin-Off record date.

38.   The Spin-Off is expected to free Exelis from the burden of the underinvested Mission Systems Services business, which is experiencing severe declines in revenue due to

budget constraints and the drawdown of U.S. troops in the Middle East. The Mission Systems business had been weighing on the rest of Exelis and concealing the improved growth profile of Exelis' C4ISR and IT Systems business unit.[6]   Thus, the Proposed Transaction comes at a particularly opportune time for Harris, as it has been able to acquire Exelis on the cheap as a result of the fact that the Company's revenues have been suppressed by the struggling Mission Systems Services business segment. However, as a result of the Spin-Off, Exelis is poised to experience significant improvement in its financial results over the coming quarters, making the Merger Consideration inadequate.

39.     In November 2014 Exelis also authorized a $350 million share buyback program over the next two years, signaling that the Company believed its stock was undervalued. While the buyback program was initiated in response to third quarter results that missed expectations, Company executives announced that they believe they can make up for a decrease in U.S. government spending through gains in the private sector and international growth.[7]   The Company also stated that its growing work backlog would carry it through in terms of revenue and reputation as a solid contractor.

40.     While the entire defense industry has faced pressure to expand its customer base amidst the Pentagon's announced plan to reduce spending by $1 trillion over the next decade, Exelis has nonetheless recently won several lucrative contracts with the U.S. military, which stand to drive the Company's financial performance in the coming months and years.

---

[6]     Aronson Capital Partners, *Federal M&A Trends in Spin-Off and Divestiture Transactions*, ARONSON FED POINT, October 28, 2014, http://blogs.aronsonllc.com/fedpoint/2014/10/28/federal-ma-trends-spin-divestiture-transactions/.

[7]     Igor Kossov, *Exelis To Launch $350M Stock Buyback Through 2016*, LAW360, November 4, 2014, http://www.law360.com/articles/593199/exelis-to-launch-350m-stock-buyback-through-2016.

41.     In June 2014 Exelis won a $516 million contract to provide the U.S. Army Corps of Engineers ("Army Corps") with enterprise-wide IM/IT services, beating back competition from Lockheed Martin Corp. ("Lockheed") and other contractors.[8]   In January 2015 the U.S. Government Accountability Office denied Lockheed's protest over the Army Corps' decision to award the contract to Exelis, meaning that the deal can now proceed unimpeded.[9]

42.     Exelis is also one of three contractors handling the majority of the work in connection with the development of NASA's $8.8 billion James Webb Space Telescope, a project that is currently projected to exceed its budget.[10]

43.     In June 2014 Exelis was also awarded a $143 million contract for operations and maintenance of communications equipment and information systems for an Army unit in southwest Asia.[11]

44.     And on May 22, 2014 Exelis announced that it had been awarded part of the U.S. Department of Homeland Security's $22 billion Enterprise Acquisition Gateway for Leading Edge Solutions II procurement for information technology services.[12]

---

[8]     Matt Sharp, *Lockheed's Protest of $516M Army Corps IT Contract Denied*, LAW360, January 8, 2015, http://www.law360.com/articles/609642/lockheed-s-protest-of-516m-army-corps-it-contract-denied.

[9]     *Id.*

[10]     Rebecca McCray, *$9B Hubble Replacement May Blow Its Budget, GAO Says*, LAW360, December 15, 2014, http://www.law360.com/articles/604720/-9b-hubble-replacement-may-blow-its-budget-gao-says.

[11]     Kira Lerner, *Exelis Nabs $143M Army Communications Systems Contract*, Law360, June 2, 2014, http://www.law360.com/articles/543564/exelis-nabs-143m-army-communications-systems-contract.

[12]     *Id.*

45.     Although Exelis has reported a decrease in revenue and earnings in recent quarters, the Company has announced significant increases in funded orders and funded backlog, and both Exelis management and industry analysts believes that the Company's future prospects are strong, particularly in light of strong growth in its C4ISR segment and increased demand from international and private customers.  Indeed, the Company has announced $68 million in orders from international clients in the past month alone.[13]

46.     On May 2, 2014 Exelis reported financial results for the first quarter of 2014. First-quarter earnings were $52 million, or $0.27 per share, a 17 percent increase from the first quarter of 2013.  Adjusted earnings, which exclude costs related to the Spin-Off of the current Exelis Mission Systems business into Vectrus, were $0.29 per share, a 26 percent increase from the same period in 2013.  The Company secured $1 billion in orders during the first quarter of 2014, including significant new business in three of its four Strategic Growth Platforms, along with orders from a variety of international customers.  The Company's funded backlog increased 21 percent over the first quarter of 2013.

47.     Commenting on the first quarter 2014 results, defendant Melcher stated "[w]e continued to earn new business from domestic and international customers in the first quarter of 2014 and profitability improved significantly in our C4ISR segment."

48.     Subsequently, on August 1, 2014 Exelis announced solid operating results for the second quarter of 2014.  Specifically, the Company reported that it had secured $1.2 billion in funded orders during the quarter, including significant new business in several of its strategic

---

[13]     Including a $30 million contract to provide an existing international customer single and dual vehicular radios systems along with installation kits and dismounted soldier radio systems, a $28 million contract to provide an existing international customer with additional communications equipment, spare parts and ancillary devices, and a $10 million contract to provide the government of Taiwan with night vision tubes.

growth platforms, along with orders from a variety of international customers.  The Company also announced that operating income for its C4ISR segment increased by 50 percent from the second quarter of 2013.  Exelis generated $174 million in free cash flow during the quarter and returned $49 million to shareholders via dividends and share buybacks.

49.     Most recently, on October 31, 2014 Exelis reported financial results for the third quarter of 2014.  The Company announced $1.5 billion in funded orders for the quarter and a funded backlog increase of 15 percent over the second quarter of 2014.  C4ISR segment revenue also increased year-over-year for the second consecutive quarter.

50.     Commenting on the third quarter financial results, defendant Melcher stated:

> We are encouraged by the developing trend of revenue growth in our C4ISR segment and continue to earn new business in each of our strategic growth platforms, as well as from targeted international and commercial customers…Successful completion of the Vectrus spinoff was also a major milestone for us in the third quarter and positions both companies for success in the future.

51.     In sum, Exelis is well positioned to generate significant earnings in the foreseeable future spurred by its expanding customer base in foreign and private markets, strong growth in its C4ISR business segment, and increasing funded backlogs.  Despite Exelis' bright financial prospects, the Board has now agreed to sell the Company at a price below its intrinsic value to the detriment of Exelis' common shareholders.

**C.**     **The Preclusive Deal Protection Devices Unfairly Deter Superior Offers**

52.     In addition to failing to engage in a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection devices that operate conjunctively to deter other suitors from submitting a superior offer for the Company.

53.     First, the Merger Agreement provides for an onerous no solicitation provision that prohibits the Company or the Individual Defendants from taking any affirmative action to

16

comply with their fiduciary duties to obtain the best price possible under the circumstances. Specifically, section 7.2 of the Merger Agreement states that the Company and the Individual Defendants shall not:

> (A) initiate, solicit, knowingly assist or knowingly encourage any inquiries or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, any Acquisition Proposal, including by way of furnishing any non-public information or data concerning the Company or its Subsidiaries or any assets owned (in whole or part) by the Company or its Subsidiaries to any Person in furtherance of an Acquisition Proposal or if it would reasonably be expected to lead to an Acquisition Proposal;

> (B) enter into any letter of intent, memorandum of understanding, acquisition agreement, merger agreement, joint venture agreement, partnership agreement or other similar agreement (other than a confidentiality agreement referred to in Section 7.2(a)(ii) entered into in compliance with Section 7.2(a)(ii)) (an "Alternative Acquisition Agreement") relating to, or that is intended to or would reasonably be expected to lead to, any Acquisition Proposal;

> (C) grant any waiver, amendment or release under any standstill or confidentiality agreement concerning an Acquisition Proposal; provided, that notwithstanding the foregoing, the Company shall be permitted to fail to enforce any provision of any confidentiality, "standstill" or similar obligation of any Person entered into after the date of this Agreement if the board of directors of the Company determines in good faith, after consultation with its outside legal counsel, that the failure to take such action is necessary in order for the directors to comply with their fiduciary duties under applicable Law; or

> (D) engage in, continue or otherwise participate in any discussions or negotiations regarding any Acquisition Proposal.

54.     Furthermore, Section 7.2 of the Merger Agreement grants Harris recurring and unlimited matching rights, which provides Harris with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which Harris can use to prepare a matching bid; and (ii) four business days to negotiate with Exelis, amend the terms of the Merger Agreement, and make a counter-offer in the event a superior offer is received.

17

55.     The non-solicitation and matching rights provisions unfairly deter superior bidders from making a fair offer for the Company, as most will be hesitant to expend the time, cost, and effort of making a superior proposal while knowing that Harris can easily foreclose a competing bid.  Indeed, as one analyst noted, "Harris [is] unlikely to face competitor[s] in [a] bid for Exelis as most would-be defense bidders are 'fairly conservative,' [and] unlikely to get involved in [a] public contest."[14]   As a result, these provisions unreasonably favor Harris, to the detriment of Exelis' public shareholders.

56.     Lastly, section 9.5 of the Merger Agreement provides that Exelis must pay Harris a termination fee of either $57.6 million in the highly unlikely event the Company is able to finalize the terms of a deal with a superior bidder before March 7, 2015, or a fee of $138.4 million in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal after that date.  These termination fees further deter other suitors from making a superior proposal for the Company, as they will have to pay a naked premium for the right to provide Exelis' shareholders with a better offer.

57.     Ultimately, these deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

58.     In sum, the Individual Defendants have breached their fiduciary duties owed to Exelis shareholders.  The Board failed to obtain fair and reasonable consideration for Exelis shareholders, agreed to onerous deal protection devices that may prevent the emergence of a

---

[14]     Rachel Layne, *Alternate Exelis Bid Unlikely as Defense Mkt Isn't 'Frothy': RBC*, BLOOMBERG, February 6, 2015, https://www.bloomberglaw.com/document/NJCWWA6TTDS9.

superior offer, and likely put their own personal interests ahead of those of Exelis shareholders while negotiating the terms of the Proposed Transaction.

59.     The Board has thus prevented Plaintiff and the Class from being adequately compensated for their Exelis shares.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against the Individual Defendants
for Breach of Fiduciary Duties**

60.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

61.     The Individual Defendants have violated fiduciary duties of care, loyalty, and good faith owed to Exelis shareholders.

62.     By the acts, transactions, and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Exelis.

63.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, and care owed to Exelis shareholders because, among other reasons, they failed to take reasonable steps to obtain and/or ensure that Exelis shareholders receive adequate consideration for their shares and agreed to restrictive deal protection devices that deter other suitors from making a superior bid for the Company.

64.     By reason of the foregoing acts, practices, and courses of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

65.     As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Exelis' assets and businesses and have been and will be prevented from obtaining a fair price for their Exelis common shares.

66.     Unless the Court enjoins Defendants, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

67.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against Harris and Merger Sub for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duty**

68.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

69.     Harris and Merger Sub have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Exelis shareholders, and have participated in such breaches of fiduciary duties.

70.     Harris and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Harris and Merger Sub rendered substantial assistance

in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

71.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

A.     Declaring this action to be a Class Action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.     Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for the Company's shareholders;

C.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.     Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants' wrongdoing;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance for attorneys' and expert fees and expenses; and

F.     Granting Plaintiff and other members of the Class such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  February 12, 2015                    Respectfully submitted

                                             By: */s/  William N. Riley*

                                             **PRICE WAICUKAUSKI & RILEY, LLC**
                                             William N. Riley
                                             James A. Piatt
                                             Hammond Block Building
                                             301 Massachusetts Avenue
                                             Indianapolis, Indiana  46204
                                             Tel:  317-633-8787
                                             Fax:  317-633-8797
                                             Email: wriley@price-law.com
                                                    jpiatt@price-law.com

                                             *Attorneys for Plaintiff*


**OF COUNSEL**

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
Miles D. Schreiner
369 Lexington Ave., Tenth Floor
New York, NY  10017
Tel:  212-983-9330
Fax:  212-983-9331
Email: jmonteverde@faruqilaw.com
       mschreiner@faruqilaw.com

*Attorneys for Plaintiff*