**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| WILLIAM MCGILL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:15-cv-00217-TWP-DKL ) ) |
| RALPH HAKE, DAVID F. MELCHER, JOHN J. HAMRE, PAUL J. KERN, HERMAN E. BULLS, PATRICK MOORE, MARK L. REUSS, ROBERT DAVID YOST, BILLIE I. WILLIAMSON, HARRIS CORPORATION, and HARRIS COMMUNICATION SOLUTIONS (INDIANA), INC., | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................1

II.    BACKGROUND OF THE LITIGATION.......................................................3

    A.    Procedural History of the Litigation ......................................3

    B.    Settlement Negotiations and Confirmatory Discovery ...........5

    C.    Preliminary Approval and Notice to Shareholders ................6

III.    THE SETTLEMENT TERMS....................................................................7

IV.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED .......................9

    A.    The Applicable Legal Standard ..............................................9

    B.    The Settlement Is Fair, Reasonable, and Adequate and Warrants Final Approval ......................................................11

        1.    Information Concerning Exelis's Projections Relied Upon By J.P. Morgan ....................................................12

        2.    Information Concerning the Financial Analyses of J.P. Morgan...............15

        3.    Information Concerning the Background of the Merger ..........................17

    C.    The Relevant Factors Support Final Approval of the Settlement ..........................19

        1.    The Strength of Plaintiffs' Case Compared to the Terms of the Settlement Supports Approval of the Settlement......................................19

        2.    The Complexity, Length, and Expense of Further Litigation Supports Approval of the Settlement...........................................20

        3.    The Class Members Overwhelmingly Support the Settlement.................21

        4.    The Settlement Is the Product of Good Faith, Arm's-Length Negotiations ..................................................21

        5.    Plaintiffs' Counsel Endorse the Settlement...............................................22

        6.    The Stage of the Proceedings and the Amount of Discovery Completed ..................................................23

V.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED .........24

VI.    THE FEE AWARD SHOULD BE APPROVED ............................................24

A.      The Applicable Legal Standard ............................................................25

B.      The Common Benefit Doctrine Entitles Plaintiffs' Counsel to an Attorneys'
        Fee Award ..........................................................................................26

C.      Negotiated Resolutions of Fee Issues Are Preferred and Should Be Upheld ........28

D.      The Requested Attorneys' Fee Award Is Reasonable Under a Lodestar
        Analysis..............................................................................................29

E.      Fees Awarded in Similar Cases Support the Fee Request ...................................31

VII.    CONCLUSION ................................................................................................32

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Lockheed Martin Corp.*,
  No. 06-cv-701, 2015 U.S. Dist. LEXIS 93206 (S.D. Ill. July 17, 2015) ................................. 30

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975) ....................................................................................................... 25

*Anderson v. Torrington Co.*,
  755 F. Supp. 834 (N.D. Ind. 1991) ................................................................................. 11

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) .......................................................................................... 10

*Boeing Co. v. Van Gernert*,
  444 U.S. 472 (1980) ....................................................................................................... 25

*Brown v. Brewer*,
  No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010) ....... 14

*Burdett v. Miller*,
  957 F.2d 1375 (7th Cir. 1992) ........................................................................................ 31

*Collier v. Brightpoint, Inc.*,
  No. 1:12-cv-01016, 2013 U.S. Dist. LEXIS 62125 (S.D. Ind. May 1, 2013) ..................... 32

*County of York Emps. Ret. Plan v. Merrill Lynch & Co., Inc.*,
  No. C.A. 4066-VCN (Del. Ch. Aug. 31, 2009) ............................................................... 32

*David P. Simonetti Rollover IRA v. Margolis*,
  2008 Del. Ch. LEXIS 78 (Del Ch. Jun. 27, 2008) ..................................................... 15, 18

*Denney v. Wallace*,
  No. 2:10-cv-01154 (W.D. Pa. Aug 31, 2010) .................................................................. 32

*Doe v. Bradley*,
  64 A.3d 379 (Del. Super. Ct. 2012) ................................................................................ 21

*Dutchak v. Cent. States, Se. & Sw. Areas Pension Fund*,
  932 F.2d 591 (7th Cir. 1991) ...................................................................................... 30, 31

*Felzen v. Andreas*,
  134 F. 3d 873 (7th Cir. 1998) .......................................................................................... 10

*Fischbein v. First Chicago Corp.*,
  No. 97-CV-1989, 1998 U.S. Dist. LEXIS 2701 (N.D. Ill. Feb. 27, 1998) .......................... 13

*Florin v. Nationsbank of Ga., N.A.*,
  60 F.3d 1245 (7th Cir. 1995) ...................................................................................... 25, 27

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ....................................................................................... 9, 22

*GE Capital Corp. v. Lease Resolution Corp.*,
  128 F.3d 1074 (7th Cir. 1997) ......................................................................................... 10

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*,
549 F. 3d 1079 (7th Cir. 2008) ................................................................ 19

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
212 F.R.D. 400 (E.D. Wis. 2002) ............................................................. 11

*Hall v. Cole*,
412 U.S. 1 (1973) ................................................................................. 26, 28

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .............................................................................. 28, 30

*In re AT&T Mobility Wireless Data Servs. Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ....................................................... 23

*In re Atheros Commc'ns, Inc. S'holder Litig.*, No. 6124-VCN, 2011 Del. Ch. LEXIS 36 (Del. Ch. Mar. 4, 2011) ......................................................................................... 17

*In re Cenco, Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ............................................................ 31

*In re Complete Genomics, Inc. S'holder Litig.*,
Consol. C.A. 7888-VCL (Del. Ch. Nov. 9, 2012) ..................................... 18

In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.,
80 F. Supp. 3d 838 (N.D. Ill. 2015) ......................................................... 26

*In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009) ..................................................................... 26

*In re Emerging Commc'ns, Inc. S'holder Litig.*,
No. 16415, 2004 Del. Ch. LEXIS 70 (Del. Ch. May 3, 2004) ................... 14

*In re GeoEye, Inc., S'holder Litig.*,
Consol. No. 1:12-cv-00826 (E.D. Va. Sept. 6, 2013) ................................ 32

*In re Gould Sec. Litig.*,
727 F. Supp. 1201 (N.D. Ill. 1989) .......................................................... 31

*In re John Q. Hammons Hotels Inc. S'holder Litig.*,
No. 758-CC, 2009 Del. Ch. LEXIS 174 (Del Ch. Oct. 2, 2009) ............... 18

*In re Mexico Money Transfer Litig.*, (W. Union & Valuta),
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ..................................................... 22

*In re Netsmart Tech., Inc. S'holders Litig.*, 924 A.2d 171 (Del. Ch. 2007) ............... 13, 14, 15, 16

*In re Plains Res., Inc. S'holders Litig.*,
C.A. No. 071-N, 2005 Del. Ch. LEXIS 12 (Del. Ch. Feb. 4, 2005) .......... 30

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) .......................... 20

*In re Pure Res., Inc. S'holders Litig.*,
808 A2d 421 (Del. Ch. 2002) ................................................................... 16

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-1099, 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) .......................... 11, 25, 28

*In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) .................................................................................................. 9

*In re Talley Indus., Inc. S'holders Litig.*,
No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 13, 1998) .............................................. 12

*In re Topps Co. S'holders Litig.*,
926 A.2d 58 (Del. Ch. 2007) ............................................................................................... 16

*In re Wm. Wrigley Jr. Co. S'holders Litig.*, No. 3750-VCL, 2009 Del. Ch. LEXIS 12 (Del. Ch. Jan. 22, 2009) ......................................................................................................................... 9

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ........................................................................................ 28, 30

*Kahan v. Rosenstiel*,
424 F.2d 161 (3d Cir. 1970) ................................................................................................ 27

*Kas v. Fin. Gen. Bankshares, Inc.*,
796 F.2d 508 (D.C. Cir. 1986) ............................................................................................ 18

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) .............................................................................................. 26

*Koerner v. Copenhaver*,
No. 12-1091, 2014 U.S. Dist. LEXIS 155783 (C.D. Ill. Nov. 3, 2014) ................................... 21

*Kosseff v. Ciocia*,
No. 188, 2009 Del. Ch. LEXIS 242 (Del. Ch. Feb. 26, 2009) ................................................ 21

*Langendorf v. Conseco Senior Health Ins. Co.*,
No. 08-CV-3914, 2009 U.S. Dist. LEXIS 131289 (N.D. Ill. Nov. 18, 2009) ........................... 7

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
148 F. Supp. 2d 1141 (D. Kan. 2001) ................................................................................. 12

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
11 A.3d 1175 (Del. Ch. 2010) ............................................................................................ 16

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*,
834 F.2d 677 (7th Cir. 1987) .............................................................................................. 10

Mathur v. Bd. of Trs. of S. Ill. Univ.,
317 F.3d 738 (7th Cir. 2003) ........................................................................................ 26, 30

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970) ................................................................................................ 25, 26, 27

*Nichting v. DPL, Inc.*,
No. 3:11-cv-141, slip op. (S.D. Ohio Feb. 24, 2012) ........................................................... 14

*Pawlak v. Greenawalt*,
713 F.2d 972 (3d Cir. 1983) ............................................................................................... 25

*Podesta v. Calumet Indus., Inc.*,
No. 78 C 1005, 1978 U.S. Dist. LEXIS 17847 (N.D. Ill. May 9, 1978) .................................. 18

*Prandini v. Nat'l Tea Co.*,
  557 F.2d 1015 (3d Cir. 1977) ................................................................................. 29

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) ................ 22

*Reid v. Unilever U.S., Inc.*,
  2015 U.S. Dist. LEXIS 75383 (N.D. Ill. June 10, 2015) ......................................... 31

*RMB Fasteners, Ltd. v. Heads & Threads Int'l, LLC*,
  No. 11 CV 02071, 2012 U.S. Dist. LEXIS 14361 (N.D. Ill. Feb. 7, 2012) ...................... 13

*Rosenblatt v. Getty Oil Co.*,
  493 A.2d 929 (Del. 1985) ....................................................................................... 14

*Ryan ex rel. Maxim Integrated Prods. v. Gifford*,
  C.A. No. 2213, 2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009) ................................ 30

*Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.*, 532 A.2d 1324 (Del. Ch. 1987) .......................... 14

*Smith v. Robbins & Myers, Inc.*,
  969 F. Supp. 2d 850 (S.D. Ohio 2013) ................................................................... 14

*St. Louis Police Ret. Sys. v. Severson*,
  No. 12-CV-5086, 2012 U.S. Dist. LEXIS 152392 (N.D. Cal. Oct. 23, 2012) ................ 11

*St. Louis Police Ret. Sys.*,
  2012 U.S. Dist. LEXIS 152392 ............................................................................... 12

*Turberg v. ArcSight*,
  C.A. No. 5821-VCL, 2011 WL 4445653 (Del. Ch. Sept. 20, 2011) [Transcript] ................ 15

**Other Authorities**

6A Charles Alan Wright & Arthur R. Miller,
  Federal Practice and Procedure: Civil 2d § 1522, at 225-26 (2d ed. 1990) ................ 10

**Rules**

*Fed. R. Civ. P. 23* ....................................................................................................... 26

# I.     INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs William McGill and Jesse Mallinger ("Lead Plaintiffs"), on behalf of themselves and Settlement Class Members, respectfully move this Court for an Order granting final certification of the Class in this action (the "Action"); final approval of the Parties' settlement (the "Settlement") in accordance with the Stipulation and Agreement of Compromise, Settlement, and Release filed on October 23, 2015 (the "Stipulation"); and approval of an unopposed award of attorneys' fees and expenses.[1]

The efforts of Plaintiffs' Counsel secured from Defendants[2] an agreement to disclose to Exelis shareholders previously undisclosed material information in connection with seeking their approval of the Merger (the "Supplemental Disclosures"). As a result of the Supplemental Disclosures and this Settlement, Exelis shareholders were able to cast a fully-informed vote on the Merger because they had access to a full summary of the Company's financial projections for calendar years 2014-2019 as a standalone company, thereby allowing shareholders to better evaluate how the merger consideration compared to Exelis's prospects as a standalone company. In addition, the Supplemental Disclosures provided Exelis's shareholders with the key inputs and assumptions underlying the financial analyses performed by J.P. Morgan Securities LLC ("J.P. Morgan") in connection with its fairness opinion and certain information relating to the conflicts of interest infecting the sales process.  These Supplemental Disclosures resolved the disclosure

---

[1] Unless otherwise noted, all capitalized terms shall have the same definitions as set forth in the Stipulation.  A copy of the Stipulation was attached as Exhibit 1 to the Declaration of William N. Riley in Support of Co-Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement ("Riley Decl."), which was filed on October 23, 2015 (Dkts. No. 35, 35-1).

[2] The term "Defendants" refers to Exelis, Inc. ("Exelis"), Harris Corporation ("Harris"), Harris Communication Solutions (Indiana), Inc. ("Harris Communication"), Ralph Hake, David F. Melcher, John J. Hamre, Paul J. Kern, Herman E. Bulls, Patrick Moore, Mark L. Reuss, Robert David Yost, and Billie I. Williamson (the "Individual Defendants" or the "Board," and, collectively with Exelis, Harris, and Harris Communication, the "Defendants").

issues raised by Plaintiffs in the litigation and would not have been available to Exelis shareholders without this lawsuit. *See* Declaration of Stephen J. Oddo in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Application for Award of Attorneys' Fees and Expenses ("Oddo Decl."), ¶15, filed herewith; Stipulation, Ex. A.

The efforts of Plaintiffs and their counsel to achieve this Settlement included devoting substantial time and resources to investigate and research the public filings made by Exelis and Harris, including publicly available information about the Merger; investigating and researching stock analyst reports on Exelis about the Merger; consulting with financial valuation experts; and reviewing non-public documents produced by Exelis and following through with aggressive litigation, including drafting detailed complaints and engaging in preliminary and confirmatory discovery which included, among other things, the depositions of the depositions of Exelis's Chairman, defendant Ralph Hake and a representative of J.P. Morgan. Oddo Decl., ¶19. As a result of these efforts, holders of over 150 million Exelis shareholders were able to make informed and intelligent decisions about whether to vote in favor of or against the Merger. *Id*., ¶16.

In light of the material benefits caused by Plaintiffs' efforts, the Settlement also provides for an award of attorneys' fees and expenses for Plaintiffs' Counsel of $410,000 ("Fee and Expense Amount"), which Defendants do not oppose and have agreed to pay upon approval by the Court. Stipulation, ¶15. The Fee and Expense Amount was negotiated at arm's-length after the material terms of the Settlement had been agreed to, and is fair and reasonable in light of the substantial benefits achieved in the Settlement and in line with fees awarded in similar merger-related litigation. Oddo Decl., ¶47; *see also* Stipulation, ¶U. The Fee and Expense Amount also reflects a modest multiplier of approximately 1.1 to the total lodestar of $359,041.00, comprised of over

693.90 hours of work, not including the $13,409.74 in expenses expended by Plaintiffs' Counsel.[3] Oddo Decl., ¶51 & Exs. 2-6. To date, there have been no objections to this Settlement, including the Fee and Expense Amount.

For the reasons stated herein, Plaintiffs respectfully move this Court to approve the Settlement, finally certify the Class, and approve Plaintiffs' request for attorneys' fees and expenses. Defendants do not oppose the foregoing relief.[4]

## II. BACKGROUND OF THE LITIGATION[5]

On February 5, 2015, Exelis and Harris finalized an Agreement and Plan of Merger ("Merger Agreement"), pursuant to which Harris Communication merged with and into Exelis, with Exelis surviving as a wholly owned subsidiary of Harris (the "Merger"), and Exelis shareholders received $16.625 in cash and 0.1025 of a share of Harris common stock (the "Merger Consideration") in exchange for each share of Exelis common stock. Oddo Decl., ¶6.

### A. Procedural History of the Litigation

On February 12, 2015, co-lead plaintiff William McGill filed this Action as a class action alleging that the Individual Defendants breached their fiduciary duties to Exelis's shareholders in connection with the proposed Merger and that Harris and Harris Communication aided and abetted the Individual Defendants' breaches of fiduciary duties. *Id.*, ¶7.

On March 5, 2015, Harris filed with the U.S. Securities and Exchange Commission ("SEC") a Form S-4 Registration Statement (and certain amendments thereto) relating to the

---

[3] These numbers are detailed in the accompanying fee and expense declarations from Plaintiffs' Counsel, attached as Exhibits 2-6 to the Oddo Declaration.

[4] Although this Motion is unopposed, this Memorandum of Law is submitted solely by Plaintiffs and does not represent the views of Defendants.

[5] The Court is respectfully referred to the Oddo Declaration, filed herewith, for a detailed description of the factual background and procedural history of the Action, as well as the efforts of Plaintiffs' Counsel on behalf of the Class that resulted in the Settlement. Oddo Decl., ¶¶6-24.

Merger and containing a preliminary proxy statement and prospectus relating to the Merger distributed to Exelis shareholders (the "Form S-4"). Oddo Decl., ¶8.

On March 20, 2015, plaintiffs the George Leon Family Trust, Stephen Ballweber, Jesse Mallinger, and the Hopper Family Trust c/o Joseph R. Hopper and/or Shirley A. Hopper filed the class-action lawsuit captioned *The George Leon Family Trust, et al. v. Exelis Inc., et al.*, No. 1:15-cv-00466-RLY-DML in this Court (the "*George Leon* Action") against the Defendants, alleging substantially the same breach of fiduciary duty and aiding and abetting claims against the Individual Defendants, Harris, and Harris Communication as were alleged in this Action, and also alleging the Individual Defendants and Exelis violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 by causing a materially incomplete and misleading Registration Statement to be filed with the SEC relating to the Merger. *Id.*

On April 6, 2015, Plaintiffs served a letter requesting certain discovery items from Defendants. *Id.*, ¶10. After arm's-length negotiations as to the scope of discovery, Defendants produced certain confidential, internal documents related to the Merger (the "Confidential Documents") in response to Plaintiffs' discovery request letter. Plaintiffs' Counsel and their financial expert subsequently reviewed and analyzed the Confidential Documents in connection with their assessment of the claims asserted in the Action. *Id.*

On April 20, 2015, the Court consolidated for all purposes the *George Leon* Action into this Action, ordered the Clerk of Court to administratively close the *George Leon* Action, and designated the complaint in the *George Leon* Action—which alleges disclosure claims under the federal securities laws concerning the Form S-4—as the operative complaint. Oddo Decl., ¶11.

By separate order dated April 20, 2015, the Court appointed William McGill and Jesse Mallinger as interim co lead plaintiffs ("Lead Plaintiffs") and the law firms of Faruqi & Faruqi, LLP and Robbins Arroyo LLP as interim Lead Counsel ("Lead Counsel"). *Id.*, ¶12.

On April 24, 2015, Defendants filed with the SEC and disseminated to Exelis shareholders the definitive proxy statement on Schedule 14A ("Definitive Proxy Statement"). The Definitive Proxy Statement forms part of the registration statement on Form S-4 filed by Harris with the SEC in connection with the Merger and contained the recommendation from the Exelis board that shareholders vote in favor of the Merger. Oddo Decl., ¶13.

**B.      Settlement Negotiations and Confirmatory Discovery**

In early May 2015, counsel for the Parties began engaging in arm's-length negotiations concerning a possible resolution of the Action, including the negotiation of the Supplemental Disclosures sufficiently in advance of the Exelis shareholders meeting to approve the Merger, which was set for May 22, 2015 (the "Shareholders' Meeting"). Oddo Decl., ¶14. On May 5, 2015, having reviewed the public filings related to the Merger, the Form S-4, the Definitive Proxy Statement, and the Confidential Documents, and in consultation with their financial expert, Plaintiffs' Counsel sent a written settlement demand to Defendants. *Id.*, ¶15.

After arm's-length negotiations, the Parties entered into a memorandum of understanding on May 11, 2015 ("MOU"), which set forth an agreement in principle for the settlement of the Action between and among Plaintiffs, on behalf of themselves and the Class, and Defendants on the terms and subject to the conditions set forth in the MOU. Oddo Decl., ¶16. Pursuant to the MOU, Defendants agreed to make the Supplemental Disclosures as reflected in the Form 8-K dated May 11, 2015, filed by Exelis with the SEC. *Id.* As discussed below, the Supplemental Disclosures provided Exelis's shareholders with material information concerning the fairness of the Merger and the Merger Consideration that had been omitted from the Definitive Proxy

Statement and was necessary for them to cast a fully informed vote concerning the Merger. *Id.* On May 22, 2015, the Shareholders' Meeting was held and Exelis shareholders approved the Merger. Oddo Decl., ¶17. On May 29, 2015, the Merger closed and Exelis became a wholly owned subsidiary of Harris.

Following the execution of the MOU, Plaintiffs' Counsel conducted additional discovery to confirm the reasonableness of the terms of the Settlement (the "Confirmatory Discovery"). *Id.*, ¶18. In particular, Plaintiffs' Counsel reviewed thousands of pages of additional non-public documents produced by Defendants and conducted the depositions of Exelis's Chairman Ralph Hake and a representative of J.P. Morgan, Exelis's financial advisor. *Id.* During the course of discovery, Plaintiffs were able to fully ascertain the strengths and weaknesses of their claims. *Id.* Moreover, through the depositions of Mr. Hake and the J.P. Morgan representative, Plaintiffs assured themselves that the process undertaken by the Individual Defendants to sell the Company and how the Individual Defendants valued the Company was satisfactory. *Id.* Plaintiffs, only after full evaluation of the strengths and weaknesses of their claims, arrived at the belief that the Action favors Settlement. *Id.*

## C. Preliminary Approval and Notice to Shareholders

On October 23, 2015, Plaintiffs moved for the entry of the Scheduling Order and Order Preliminarily Approving Proposed Settlement (the "Preliminary Approval Order") that would: (i) preliminarily approve the Settlement set forth in the Stipulation; (ii) preliminarily certify, for settlement purposes only, a non-opt-out Class; (iii) approve the form, manner, and content of the notice to be provided to the proposed Class[6]; and order the direct mailing of the Notice to Class

---

[6]  The Class is defined as a non-opt-out class consisting of Plaintiffs and any and all record and beneficial holders of Exelis common stock at any time between and including September 17, 2014 and May 29, 2015, including their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs,

members; and (iv) schedule a hearing at which the Court will consider final approval of the Settlement.  Oddo Decl., ¶21; Dkt Nos. 33-35.

On October 26, 2015, this Court granted the Preliminary Approval Order and scheduled the Settlement Hearing for February 16, 2016.  Dkt. No. 36; Oddo Decl., ¶22, and Notice was disseminated to the Class.[7]  Following dissemination of the Notice, Plaintiffs' Counsel was (and continue to be) available to members of the Class to respond to comments and answer questions from Exelis shareholders.  To date, no member of the Class has expressed any objection to the Settlement.  *See* Oddo Decl., ¶24.

## III.   THE SETTLEMENT TERMS

The Settlement required Exelis to disclose certain material information to members of the Class that Plaintiffs believed was critical to Exelis's shareholders' ability to make a fully informed decision regarding whether to vote for, or against, the Merger.  The Supplemental Disclosures, which were set forth in a Form 8-K filed by Exelis with the SEC on May 11, 2015,

---

assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors and successors and assigns, but excluding Defendants, their subsidiaries or other affiliates, their assigns, members of their immediate families, officers of Exelis, and the legal representatives, heirs, successors, or assigns of any such excluded person.  Stipulation, ¶1.3.

[7]   Class members were sent the detailed Notice attached to the Stipulation as Exhibit C and approved by this Court.  Oddo Decl., ¶23. The Notice set forth the background and procedural history of this litigation, including the claims asserted against the Defendants; a summary of the Settlement terms; an explanation of the persons and claims being released under the Settlement; a detailed explanation of reasons for the Settlement; a description of the Class; the date, time, and place of the hearing for final approval; a statement of the Class members' right to appear and object with or without counsel and the procedures which must be followed to be heard; a statement that Plaintiffs' Counsel intends to petition for an award of attorneys' fees and expenses, and whom to contact if more information about the Settlement is desired.  *Id.* Notice plans like the one utilized here are common in class actions and constitute valid and sufficient notice to proposed class members.  *Id.*  Accordingly, the Notice comports with the requirements of due process and Rule 23.  *Langendorf v. Conseco Senior Health Ins. Co.*, No. 08-CV-3914, 2009 U.S. Dist. LEXIS 131289, at *14-19 (N.D. Ill. Nov. 18, 2009).

provided material information to Exelis shareholders in advance of the Shareholders' Meeting concerning the following:

- with respect to the non-public financial forecasts that Exelis provided to J.P. Morgan, Harris, and Harris' financial advisor in connection with the negotiation of the Merger, which were prepared by Exelis's management for the Board to use in connection with evaluating the Merger, the Supplemental Disclosures provided Exelis's projections for unlevered free cash flow and earnings before interest and taxes ("EBIT") for 2014-2019;

- with respect to the financial analyses J.P. Morgan prepared  in connection its fairness opinion, the Supplemental Disclosures provided the multiples calculated for each of the eleven companies selected for the Public Trading Multiples Analysis for Exelis;

- with respect to the financial analyses J.P. Morgan prepared in connection with its fairness opinion, the Supplemental Disclosures provided the multiples calculated for each of the seven companies selected for the Public Trading Multiples Analysis for Harris;

- with respect to potential conflicts of interest involving the Merger, the Supplemental Disclosures disclosed that there had not been any substantive discussions between Exelis and Harris regarding post-Merger employment of any of Exelis's executive officers by Harris, or regarding post-Merger board membership of any director or officer of Exelis on the Harris board of directors;

- with respect to potential conflicts of interest involving J.P. Morgan, the Supplemental Disclosures provided additional information about J.P. Morgan's

role as the joint lead arranger, joint bookrunner, and agent on a 2015 Exelis credit facility; and

- with respect to the run rate synergies that Exelis management estimated could result from the Merger, which were cited as a benefit Exelis shareholders will reap in connection with the Merger, the Supplemental Disclosures explained where those synergies were expected to result from.

As discussed below, courts have consistently found information of this nature, concerning a company's financial projections, a financial advisor's analyses, and potential conflicts of interest in connection with a corporate transaction, to be material and therefore sufficient for purposes of approving a settlement similar to the one reached here. *See, e.g.*, *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *48-49 (D.N.J. Mar. 25, 2010) (hereinafter "*Merck*") (granting final approval of settlement where "the supplemental disclosures facilitated communication and informed shareholders of previously undisclosed material information permitting shareholders to exercise their voting rights accordingly"); *In re Wm. Wrigley Jr. Co. S'holders Litig.*, No. 3750-VCL, 2009 Del. Ch. LEXIS 12, at *21 (Del. Ch. Jan. 22, 2009) (granting final approval where "the disclosure claims advanced in the complaint were fully and fairly addressed in the settlement").

## IV. THE PROPOSED SETTLEMENT SHOULD BE APPROVED

### A. The Applicable Legal Standard

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class wide basis. In deciding whether a class action settlement merits final approval under Rule 23(e), courts must determine whether the proposed settlement is fair, reasonable, and adequate. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Hiram Walker*, 768 F.2d at 889; *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982). The

Seventh Circuit has identified the following factors that a Court may consider in evaluating the fairness of a class action settlement: (i) the strength of the plaintiffs' case on the merits measured against the terms of the settlement; (ii) the complexity, length, and expense of continued litigation; (iii) the amount of opposition to the settlement among affected parties; (iv) the presence of collusion in gaining a settlement; (v) the stage of the proceedings; and (vi) the amount of discovery completed. *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also Isby*, 75 F.3d at 1199.

The Seventh Circuit has endorsed an overriding public interest in favor of the settling of litigation, particularly class actions. *See Isby*, 75 F.3d at1196 ("Federal courts naturally favor the settlement of class action litigation."). "Settlement should be facilitated at as early a stage of the litigation as possible." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d §1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes). The proceedings to approve a settlement should not be transformed into an abbreviated trial on the merits. *See, e.g., Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987). As the Seventh Circuit has explained:

> Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980) , *overruled on other grounds by Felzen v. Andreas*, 134 F. 3d 873 (7th Cir. 1998). In addition, "[a] strong presumption of fairness attaches to a settlement agreement when it is the result of this type of [arm's length] negotiation." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers,*

*L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (citing *Anderson v. Torrington Co.*, 755 F. Supp. 834, 838 (N.D. Ind. 1991)).

Here, this analysis weighs in favor of approval of the Settlement. Plaintiffs and Plaintiffs' Counsel have examined the facts, the applicable law, and the arguments Defendants could have raised in defense to Plaintiffs' claims; have weighed the benefits secured by the proposed Settlement against the risk, delay, and cost of further litigation; and have determined, in their judgment, that the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Class.

**B.    The Settlement Is Fair, Reasonable, and Adequate and Warrants Final Approval**

In connection with the Settlement, Defendants agreed to make the Supplemental Disclosures to remedy Plaintiffs' disclosure claims. Oddo Decl., ¶16. The Supplemental Disclosures were disseminated to Exelis's shareholders prior to the shareholders' vote, which provided a substantial benefit to the Class. *See, e.g.*, *Merck*, 2010 U.S. Dist. LEXIS 29121, at *48-49.

It is well-settled that curative disclosures, which provide material information to shareholders faced with a significant decision, such as whether or not to approve a merger, confer a substantial benefit on them. This is because "[a] fully informed shareholder vote in compliance with Section 14(a) of the Securities Exchange Act [ ] is in the best interests of shareholders and the shareholding public generally." *St. Louis Police Ret. Sys. v. Severson*, No. 12-CV-5086, 2012 U.S. Dist. LEXIS 152392, at *17 (N.D. Cal. Oct. 23, 2012). Indeed, numerous courts have recognized that the most meaningful remedy for a violation of disclosure obligations in connection with a merger is the disclosure of the material information that shareholders have been denied access to before the transaction is consummated, not a subsequent

claim for money damages. *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149-50 (D. Kan. 2001) ("[T]he free and intelligent voting rights of plaintiff's shareholders will be forfeited if such votes are exercised based upon false or misleading information. Monetary damages cannot restore the right of shareholders to effectively exercise their corporate suffrage rights."); *St. Louis Police Ret. Sys.*, 2012 U.S. Dist. LEXIS 152392, at *16-17 ("disclosure deficiencies cannot be remedied effectively by an 'after-the-fact damages' case."); *In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 13, 1998) ("[T]he timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process.").

As detailed herein, the information Plaintiffs obtained for the Class via the Supplemental Disclosures was clearly material to Exelis's shareholders.

### 1. Information Concerning Exelis's Projections Relied Upon By J.P. Morgan

*First*, the Supplemental Disclosures provided Exelis's shareholders with material information related to the Company's projections, created by Exelis management and relied upon by J.P. Morgan in preparing its valuation analyses in support of its fairness opinion. Oddo Decl., ¶29. Specifically, with respect to these non-public financial forecasts, the Supplemental Disclosures provided Exelis's projections for unlevered free cash flow and EBIT for 2014-2019. *Id.* In addition, with respect to the run rate synergies that Exelis management estimated could result from the Merger, the Supplemental Disclosures explained where those synergies were expected to result from. *Id.*

According to the projections, Exelis's financial performance as a standalone company was projected to increase between 2014 and 2019. Exelis's EBIT was projected to increase from $408 million in 2014 to $460 million by 2019 – an increase of nearly 13%, and unlevered free cash flow was projected to increase from $111 million to $301 million in the same time period – a significant increase of 171%. The incredible projected growth of the Company as a standalone entity over the next five years was critical information for Exelis shareholders to have in assessing the fairness of the Merger and comparing the Merger consideration with Exelis's prospects as a standalone entity. Moreover, J.P. Morgan's DCF analysis expressly relied upon Exelis's financial projections. Thus, without such this disclosure, Exelis shareholders were precluded from determining what weight, if any, to place on J.P. Morgan's fairness opinion in deciding how to vote on the Merger. Oddo Decl., ¶30.

For these Supplemental Disclosures alone, the Settlement – and, as addressed below, Plaintiffs' Counsel's Fee and Expense Amount – should be approved. Indeed, as the Delaware Court of Chancery has previously recognized:

> [W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Only providing some of that information is insufficient to fulfill the duty of providing a 'fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the [] board as to how to vote ... rely.'

*In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 202 (Del. Ch. 2007). [8]

---

[8] Although the Company is organized under the laws of Indiana, courts in this State often look to Delaware on matters concerning corporate law, particularly where Indiana has had little opportunity to develop law on the subject and given Delaware's expertise in this area of law. *See, e.g.*, *RMB Fasteners, Ltd. v. Heads & Threads Int'l, LLC*, No. 11 CV 02071, 2012 U.S. Dist. LEXIS 14361, at *48 (N.D. Ill. Feb. 7, 2012) ("Illinois courts are often guided by decisions of other jurisdictions, especially Delaware cases on corporate law issues."); *Fischbein v. First Chicago Corp.*, No. 97-CV-1989, 1998 U.S. Dist. LEXIS 2701, at *19 n.9 (N.D. Ill. Feb. 27, 1998) (applying Delaware law to deal with the corporate law issues).

In particular, the Delaware Chancery Court has repeatedly found the disclosure of projections to be "among the most highly-prized disclosures by investors." *Netsmart*, 924 A.2d at 203; *In re Emerging Commc'ns, Inc. S'holder Litig.*, No. 16415, 2004 Del. Ch. LEXIS 70, at *13 (Del. Ch. May 3, 2004) (projections are "highly material" because knowledge of the projections "would have enabled the shareholders to understand [the company's] intrinsic worth and the extent of the market's undervaluation of their company"); *Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.*, 532 A.2d 1324, 1339-40 (Del. Ch. 1987) (nondisclosure of "corporation's ... projected revenues or income" is "highly material and constituted violations of the defendants' duty of candor"). Additionally, courts throughout the country have placed a similar premium on the disclosure of projections. *See, e.g.*, *Nichting v. DPL Inc.*, No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739, at *17 n.16 (S.D. Ohio July 15, 2011) ("it smacks of materiality that a voter be made aware of the Company's cash flow projections in order to make an informed decision."); *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 874 (S.D. Ohio 2013) (finding omitted line items from financial projections were material because the projections were used by financial advisor in its fairness analyses); *Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. 'There is a substantial likelihood that a reasonable shareholder would consider it important' in making his decision.") (citation omitted). Thus, it is axiomatic that projections related to Exelis's future financial success as a standalone entity were material to Exelis shareholders in evaluating the Merger.

---

Moreover, Delaware frequently deals with corporate merger litigation attacking disclosures, and applies the same standard of materiality as does this Court. *See Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985) (A fact is material if a reasonable shareholder would consider it important in deciding how to vote.).

## 2.     Information Concerning the Financial Analyses of J.P. Morgan

*Second*, the Supplemental Disclosures provided Exelis's shareholders with material information related to J.P. Morgan's valuation analyses and fairness opinion. Oddo Decl., ¶31. Specifically, with respect to the financial analyses J.P. Morgan prepared in connection with its fairness opinion, the Supplemental Disclosures provided: (1) the multiples calculated for each of the eleven companies selected for the Public Trading Multiples Analysis for Exelis; and (2) the multiples calculated for each of the seven companies selected for the Public Trading Multiples Analysis for Harris. *Id.*

The selected comparable companies used in the analysis were chosen because J.P. Morgan felt they all shared similarities to Exelis. Invariably, however, some types of companies will share more similarities to Exelis than others and, without the individual multiples, shareholders have a limited ability to gauge which companies are most like Exelis when drawing conclusions from J.P. Morgan's analysis. Thus, without the aforementioned information, shareholders' ability to understand J.P. Morgan's analysis was significantly limited, rendering them unable to make a fully-informed decision regarding the Merger.

It is well-settled that the key inputs and assumptions used by a financial advisor are material because they speak directly to the reliability (or lack thereof) of those analyses. *See David P. Simonetti Rollover IRA v. Margolis*, No. 3694, 2008 Del. Ch. LEXIS 78, at *30 (Del. Ch. June 27, 2008) ("The key assumptions made by a banker in formulating his opinion are of paramount importance to the stockholders because any valuation analysis is heavily dependent upon the projections utilized.") (quoting *Netsmart*, 924 A.2d at 203); Transcript of Proceedings at 43:6-15, *Turberg v. ArcSight, Inc.*, No. 5821-VCL (Del. Ch. Sept. 20, 2011) ("[I]f you were to consider what really constitutes a fair summary, then the background multiples should be in there

... [Y]ou would never see a board book that would go to the board without the background multiples.") (Oddo Decl., Ex. 7).

It is also well-settled under Delaware law that when a disclosure document "ventures into certain subjects, it must do so in a manner that is materially complete and unbiased by the omission of material facts." *In re Pure Res., Inc. S'holders Litig.*, 808 A2d 421, 448 (Del. Ch. 2002); *In re Topps Co. S'holders Litig.*, 926 A.2d 58, 76-77 (Del. Ch. 2007). Information pertaining to an expert's financial analysis is one such subject. *See id.* (financial advisor's changes to valuation were not explained and the proxy statement was therefore materially misleading); *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1177-78 (Del. Ch. 2010) ("Because the proxy statement spoke on this subject, there was a duty to do so in a non-misleading fashion.... [B]ecause the failure to describe what the banker actually came up with...the proxy statement presents a range that suggests that the merger price is far more attractive...."). Courts have also repeatedly held that shareholders are entitled to receive a fair summary of a banker's work before being asked to vote on a merger. As the Delaware Court of Chancery has recognized:

> [W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Only providing some of that information is insufficient to fulfill the duty of providing a 'fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the [] board as to how to vote ... rely.'

*In re Netsmart Tech., Inc. S'holders Litig.*, 924 A.2d 171, 202 (Del. Ch. 2007); *Pure Res.,* 808 A.2d at 449 (shareholders are entitled to a "fair summary" of the investment bankers' work).

The above-outlined key assumptions and methodologies made by Defendants were therefore of paramount importance to the Company's shareholders in providing them with a

complete and fair summary of J.P. Morgan's work and to understand the bases of their various analyses. Oddo Decl., ¶33. Without disclosure of this information, their respective analyses were misleading and incomplete.

### 3. Information Concerning the Background of the Merger

*Third*, the Supplemental Disclosures provided Exelis's shareholders with material information related to the background of the Merger. Oddo Decl., ¶34. Specifically, with respect to potential conflicts of interest involving the Merger, the Supplemental Disclosures disclosed that there had not been any substantive discussions between Exelis and Harris regarding post-Merger employment of any of Exelis's executive officers by Harris, or regarding post-Merger board membership of any director or officer of Exelis on the Harris board of directors. Moreover, with respect to potential conflicts of interest involving J.P. Morgan, the Supplemental Disclosures provided additional information about J.P. Morgan's role as the joint lead arranger, joint bookrunner and agent on a 2015 Exelis credit facility. *Id.*

Such information is vital for shareholders to determine whether the Company was properly shopped and that the sales process was carried out in such a manner as to fully maximize shareholder value. Indeed, courts have repeatedly held that information relating to the potential conflicts of interest of management or the Board is material, particularly when it relates to offers of employment. *See In re Atheros Commc'ns., Inc. S'holder Litig.*, No. 6124-VCN, 2011 Del. Ch. LEXIS 36, at *41-42 (Del. Ch. Mar. 4, 2011) (holding that "[k]nowledge that, even though specific terms were not elicited until later in the process, [an insider] was aware that he would receive an offer of employment from [a specific buyer] at the same time he was negotiating ... would be important to a reasonable shareholder's decision regarding the transaction"); Transcript of Proceedings, *In re Complete Genomics, Inc. S'holder Litig.*, No.

7888-VCL (Del. Ch. Nov. 9, 2012) (granting preliminary injunction in part due to lack of disclosure of communications concerning the CEO's expected continuing post-transaction employment) (Oddo Decl., Ex. 8); *Kas v. Fin. Gen. Bankshares, Inc*., 796 F.2d 508, 513 (D.C. Cir. 1986) (finding information about potential conflicts of interest faced by directors material); *Podesta v. Calumet Indus., Inc*., No. 78 C 1005, 1978 U.S. Dist. LEXIS 17847, at *22 (N.D. Ill. May 9, 1978) ("Section 14(a) does require that any representations made are true, and that all of the facts underlying a potential conflict of interest or breach of duty are disclosed[.]").

Similarly, courts have routinely found that disclosure concerning a financial advisor's potential conflicts are highly material and must be disclosed. *See In re John Q. Hammons Hotels Inc. S'holder Litig.*, No. 758-CC, 2009 Del. Ch. LEXIS 174, at *55-56 (Del Ch. Oct. 2, 2009) ("This Court ... has stressed the importance of disclosure of potential conflicts of interest of financial advisors... It is imperative that stockholders be able to decide for themselves what weight to place on a conflict faced by the financial advisor.") (internal citation omitted); *Simonetti Rollover IRA*, 2008 Del. Ch. LEXIS 78, at *25-36  (granting preliminary injunction in part and stating: "A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered in assessing how much credence to give its analysis. For that reason, the peculiar benefits of the Merger to UBS, beyond its expected fee, must also be disclosed to TriZetto's stockholders."); Transcript of Proceedings, *In re Art Tech. Grp., Inc. S'holders Litig.*, No. 5955-VCL (Del. Ch. Dec. 21, 2010) (enjoining merger pending disclosure of sell-side banker's past engagement fees) (Oddo Decl., Ex. 9).

Accordingly, the disclosure of the conflicts of interest present in the sales process was highly material to Exelis shareholders, as it allowed Exelis shareholders to consider for

themselves whether a conflict of interest was present given this activity, and to consider J.P. Morgan's fairness opinion in light of these facts.

### C. The Relevant Factors Support Final Approval of the Settlement

#### 1. The Strength of Plaintiffs' Case Compared to the Terms of the Settlement Supports Approval of the Settlement

Here, the Supplemental Disclosures conferred substantial benefits on the Class by permitting Exelis shareholders to make an informed decision whether to approve the Merger. *See* Section IV.B, *supra*. While Plaintiffs believe that their disclosure claims were strong, they believe that securing the Supplemental Disclosures and not attempting to enjoin the Merger, when weighed against the choice of continuing litigation or abandoning the Class, was in the best interest of the Class.

The decision to enter into the Settlement was made with knowledge of the uncertainty of Plaintiffs' claims and the difficulty of obtaining the extraordinary relief of enjoining the Merger. In order to have received full recovery, Plaintiffs' first hurdle would have been succeeding on a motion to enjoin the Merger. Plaintiffs recognize that an injunction is an extraordinary remedy, which requires a showing of probable success on the merits, irreparable harm, and a balance of the injuries in favor of Plaintiffs. *See, e.g.*, *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F. 3d 1079, 1085 (7th Cir. 2008). In the event the injunction had been granted, Plaintiffs would then have to succeed after a full trial on the merits of the case. If the injunction had been denied, Plaintiffs would have lost the ability to receive additional disclosures prior to the shareholder vote, and Exelis shareholders would not have obtained all the information needed to make a fully informed decision prior to the shareholder vote.

Plaintiffs also knew that, despite the substantial evidence obtained in support of their claims, proving that Defendants breached their fiduciary duties would be a difficult task fraught

with uncertainty. In addition, Defendants have continually denied all of the allegations against them. This denial would be a significant hurdle for Plaintiffs to overcome both in obtaining preliminary injunctive relief and in the case on the merits. Once Plaintiffs' financial experts had determined the Merger price to be within the reasonable range, and Plaintiffs' Counsel reviewed relevant SEC filings and other available Company information, it became clear it would be best for the Class to obtain additional material disclosures so that each Class member could make a decision based on a complete and accurate presentation. Oddo Decl., ¶39. Plaintiffs' Counsel believe the Supplemental Disclosures were material to the decision of each Exelis shareholder as to how to vote on the Merger, which ultimately cashed out their interest in the Company.

> **2. The Complexity, Length, and Expense of Further Litigation Supports Approval of the Settlement**

After several rounds of negotiations, Plaintiffs were able to obtain Defendants' agreement to promptly disseminate the Supplemental Disclosures in advance of the shareholder vote on the Merger. While Plaintiffs could have rejected the settlement proposals and pushed forward with a motion to enjoin the shareholder vote, such course of action would have had uncertain results. The litigation, had it proceeded, likely would have been complex and expensive. Moreover, from the outset, the sole focus of Plaintiffs' complaints was the disclosure inadequacies in Defendants' proxy materials. Once Defendants offered to correct the overwhelming majority of these disclosure deficiencies, it would have been a waste of judicial and party resources to continue litigating issues that the parties were able to consensually resolve. Given the complexities and costs, and the continued risks if the parties were to proceed further, the Settlement represents an excellent result. *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("Instead of the lengthy, costly, and uncertain course of further litigation, the

settlement provides a significant and expeditious route to recovery for the Class."); *Koerner v. Copenhaver*, No. 12-1091, 2014 U.S. Dist. LEXIS 155783, at *12-13 (C.D. Ill. Nov. 3, 2014).

### 3. The Class Members Overwhelmingly Support the Settlement

The reaction of the proposed Class – or lack thereof – further supports approval of the Settlement. *See, e.g.*, *Kosseff v. Ciocia*, No. 188, 2009 Del. Ch. LEXIS 242, at *1 (Del. Ch. Feb. 26, 2009); *Doe v. Bradley*, 64 A.3d 379, 396 (Del. Super. Ct. 2012) (fact that only one objection was raised from class of thousands was significant in showing settlement's fairness). In the Notice, Exelis shareholders were apprised of the background of the Action, the benefits achieved in the Settlement, and that Counsel would be petitioning the Court for a fee and expense award not to exceed $410,000. To Plaintiffs' knowledge to date, no objections to the Settlement have been received. Oddo Decl., ¶47.

### 4. The Settlement Is the Product of Good Faith, Arm's-Length Negotiations

The Settlement was reached following extensive, arm's-length negotiations between the Parties and the settlement negotiations were extensive and adversarial. Lead Counsel and Defendants' counsel exchanged several proposals and counter-proposals concerning the nature and scope of the Supplemental Disclosures. Oddo Decl., ¶15. At the conclusion of these negotiations, Plaintiffs and Lead Counsel unanimously agreed to enter into the MOU. *Id.* The Settlement contemplated by the MOU ensured that Exelis's shareholders were given material information necessary for them to make a fully informed decision about whether to vote for or against the Merger that had been omitted from the Proxy.

After fully analyzing the merits of all Parties' contentions, including the impact of the proposed Settlement on Plaintiffs and absent Settlement Class Members, Plaintiffs and Plaintiffs' Counsel entered into the Stipulation. Importantly, during the negotiations, all Parties had a clear

view of the strengths and weaknesses of their respective claims and defenses, and the Settlement is the product of arm's-length negotiations between the Parties, who were all represented by counsel with extensive experience and expertise in shareholder litigation.

As discussed *supra*, there is a presumption that a settlement is fair where, as here, it is the product of arm's-length negotiations between competent and experienced counsel.

### 5. Plaintiffs' Counsel Endorse the Settlement

The opinion of the attorneys who engaged in the settlement negotiations and litigated the Action is entitled to significant weight. *See, e.g.*, *Isby*, 75 F.3d at 1200 ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable, and adequate."); *In re Mexico Money Transfer Litig.* (*W. Union & Orlandi Valuta*), 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) ("The court places significant weight on the unanimously strong endorsement of these settlements by Plaintiffs' well-respected attorneys.") (citing *Isby*, 75 F.3d at 1200). In fact, courts are even "entitled to rely heavily on the opinion of competent counsel[.]" *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (internal quotation marks omitted).

Here, Plaintiffs' Counsel has significant experience in securities and other complex class action litigation, and has negotiated hundreds of other substantial class action settlements throughout the country. Oddo Decl., ¶60 & Exs. 1, 2-A, 3-A, 4-A, 5-A, 6-A. Plaintiffs' Counsel is "well informed as to the operative facts" and "considerable risks" of the Action. *See Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). It is Plaintiffs' Counsel's informed opinion that, given the uncertainty and further substantial expense of pursuing the Action against the Defendants, and the significant benefit obtained by ensuring that the Supplemental Disclosures were disseminated to Exelis's shareholders prior to the

shareholders' vote, the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class. Plaintiffs' Counsel's endorsement of the Settlement strongly militates in favor of final approval.

**6.    The Stage of the Proceedings and the Amount of Discovery Completed**

To ensure that a plaintiff has had access to sufficient information to evaluate both its case and the adequacy of a proposed settlement, courts in the Seventh Circuit consider the stage of the proceedings and the discovery taken. *See Isby*, 75 F.3d at 1199; *In re AT&T Mobility Wireless Data Servs. Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011). Here, both the knowledge of Plaintiffs' Counsel and the proceedings themselves have reached a stage where a well-founded evaluation of the claims and propriety of settlement could be made.

From the initiation of this litigation, Plaintiffs vigorously pursued this case and sought discovery in an expedited manner to cure material omissions in the Proxy. Oddo Decl., ¶19. Due to the short window within which the relief sought (*i.e.*, supplemental disclosures in advance of the imminent shareholder vote on the Merger) could be obtained and provide value to the Class, Plaintiffs agreed to preliminarily resolve this case prior to conducting discovery. *Id.* Plaintiffs, however, conditioned their signing of an MOU on retention of their ability to conduct confirmatory discovery prior to executing the Stipulation. *Id.*

Lead Counsel and Defendants' counsel were able to agree on discovery to explore Plaintiffs' concerns regarding the proposed Merger prior to the Shareholders' Meeting. Plaintiffs, through the efforts of Plaintiffs' Counsel sought and received core documents critical to evaluating the fairness of the Merger and the material omissions in the proxy, including: (i) minutes of the Exelis Board and (ii) presentations to the Exelis Board by J.P. Morgan. Oddo Decl., ¶19. Lead Counsel worked with their financial expert, who has extensive experience in

valuing companies like Exelis, to evaluate the consideration to be received by Exelis shareholders and to identify material omissions in the proxy which Plaintiffs believed needed to be cured before the Exelis shareholders' vote. *Id.* Plaintiffs' Counsel also conducted depositions of Exelis's Chairman Ralph Hake and a representative of J.P. Morgan. *Id.* This discovery confirmed that the Settlement, from the perspective of Plaintiffs and their counsel, was fair, reasonable and adequate.

## V. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiffs requested that the Court preliminarily certify the Class for settlement purposes so that notice of the proposed Settlement, the Settlement Hearing, and the rights of Class members to request exclusion or object could be issued to the Class. In its October 23, 2015 Preliminary Approval Order, this Court preliminarily certified the Class. Plaintiffs submit that nothing has changed to alter the propriety of certification of the Class and, for all the reasons stated in the Plaintiffs' Memorandum of Law in Support of their Motion for Preliminary Approval, incorporated herein by reference, Plaintiffs now request that the Court affirm its determinations in the Preliminary Approval Order and finally certify the Class for purposes of carrying out the Settlement. In addition, Plaintiffs request that the Court affirm its certification of Lead Plaintiffs as Class Representatives for the Class and its appointment of Lead Counsel as Class Counsel for the Class.

## VI. THE FEE AWARD SHOULD BE APPROVED

For the benefits conferred though this Action and the Settlement, Plaintiffs seek (and Defendants do not oppose) approval of the Fee and Expense Amount of $410,000. The requested Fee and Expense Amount is consistent with – and is, in fact, modest when compared to – awards granted to plaintiff's counsel for obtaining similar relief in precedent actions prosecuted

around the nation. Additionally, the requested Fee and Expense Amount represents a reasonable multiplier of 1.1 times Plaintiffs' Counsel's collective lodestar of approximately $359,041.00[9] and no Class members have objected to the request. Oddo Decl., ¶47. Accordingly, Plaintiffs request that this Court award to Plaintiffs' Counsel the unopposed Fee and Expense Amount.

### A.     The Applicable Legal Standard

Courts have long permitted counsel who create a benefit for others to recover their expenses, including reasonable attorneys' fees, from those who enjoy the benefit conferred. *See, e.g.*, *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 394-95 (1970). Under the common benefit doctrine, "the vindication of the class' rights … is the common benefit conferred on the class that justifies an award of attorneys' fees." *Merck*, 2010 U.S. Dist. LEXIS 29121, at *5 (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 983 (3d Cir. 1983)). The common benefit doctrine is applicable in the context of class and shareholder derivative actions when there is no ascertainable fund from which attorneys' fees can be paid, but the litigation has conferred a substantial non-monetary benefit on an ascertainable group and the court has jurisdiction over both the subject matter of the lawsuit and the defendant. *See Mills*, 396 U.S. at 396. In light of the substantial benefits conferred on Exelis shareholders in the Settlement, the Fee and Expense Amount is appropriate here under the common benefit doctrine.

In assessing the reasonableness of a fee amount, courts in the Seventh Circuit may employ "the lodestar method, the percentage of recovery method, or some combination of the two." *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 n.2 (7th Cir. 1995). Where, as

---

[9] As detailed in the time and expense declarations submitted herewith, Plaintiffs' Counsel devoted in excess of 693.90 hours and incurred $13,409.74 in unreimbursed expenses. After accounting for the expenses, the proposed Fee and Expense Amount of $410,000 reflects less than a 1.1 multiplier to Plaintiffs' Counsel's lodestar of $359,041.00. *See* Oddo Decl., Exs. 2-6.

here, there is no "common fund" from which attorneys' fees can be awarded and the chief relief sought was injunctive in nature, the lodestar method is an appropriate approach for assessing the reasonableness of the fee request. *See Kirchoff v. Flynn*, 786 F.2d 320, 328 (7th Cir. 1986) ("the lodestar approach is best in cases with substantial injunctive or precedent-creating components"). Once the lodestar figure is calculated, the Seventh Circuit permits district courts to adjust the amount up or down after considering various relevant factors, including:

> the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 n.1 (7th Cir. 2003).

Determining the amount of a fee and expense award is a matter that rests within the sound discretion of the trial court. *See In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015). Indeed, in class actions such as this, the Federal Rules of Civil Procedure ("FRCP") explicitly provide courts with the discretion to "award reasonable attorney's fees ... that are authorized by law or by the parties' agreement." FRCP 23(h). The Fee and Expense Amount sought by Plaintiffs' Counsel is reasonable and appropriate.

**B.    The Common Benefit Doctrine Entitles Plaintiffs' Counsel to an Attorneys' Fee Award**

An award of attorneys' fees is appropriate under the common benefit doctrine if: (1) an attorney confers a substantial benefit, (2) to members of an ascertainable class, and (3) the court ensures that the costs are proportionately spread among that class. *See Hall v. Cole*, 412 U.S. 1, 5 (1973); *Mills*, 396 U.S. at 393-394; *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 546 (3d Cir. 2009). Under this doctrine, attorneys' fees are awardable even though the benefit conferred is purely non-pecuniary in

nature. *Mills*, 396 U.S. at 396. Here, the Fee and Expense Amount is appropriate under the common benefit doctrine because all three elements are satisfied.

First, as discussed *supra*, Plaintiffs and their counsel conferred a substantial benefit upon Exelis shareholders by obtaining the Supplemental Disclosures, which enabled Exelis shareholders to make a fully-informed decision in connection with the shareholder vote on the Merger. Oddo Decl., ¶32. Courts have long recognized that obtaining non-monetary benefits for a class, such as additional material disclosures, can provide substantial value and support a court-approved award of attorneys' fees and reimbursement of expenses.[10] Plaintiffs' Counsel's services to the Class were of material value to the shareholders and entitle Plaintiffs' Counsel to a reasonable fee award.

Second, the benefiting class consists of a group of readily identifiable beneficiaries defined as "any and all record holders and beneficial owners of any shares of Exelis at any time between and including September 17, 2014 and May 29, 2015 ..." The substantial benefit arising from the Action through the Settlement – *i.e.*, the Supplemental Disclosures – was disseminated to all Exelis shareholders sufficiently in advance of the shareholder vote on the Merger to enable

---

[10] *See, e.g.*, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970) ("In many suits under §14(a), particularly where the violation does not relate to the terms of the transaction for which proxies are solicited, it may be impossible to assign monetary value to the benefit. Nevertheless, the stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders."); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) ("Courts may also make an exception to the American rule based on equitable doctrines, such as the "common fund" or "equitable fund" doctrine."); *Kahan v. Rosenstiel*, 424 F.2d 161, 166 (3d Cir. 1970) ("the award of attorney's fees is not limited to circumstances in which there is a monetary fund from which fees may be paid, but extends to any situation in which the litigation has conferred a substantial benefit on the members of an ascertainable class").

them to make an informed decision.  In light of these facts, the Class is ascertainable and consists of readily identifiable members.  *See Merck*, 2010 U.S. Dist. LEXIS 29121, at *49-51.

Finally, the payment of the requested fee and expense award will be spread proportionally given that Exelis and/or its insurers have agreed to bear any award of fees and expenses, and no member of the Class is expected to contribute directly to the payment of such an award.  *See Hall v. Cole*, 412 U.S. 1, 7 (1973) ("Under these circumstances, reimbursement of the plaintiffs' attorneys' fees out of the corporate treasury simply shifted the costs of litigation to the class that has benefited from them and that would have had to pay them had it brought the suit.") (internal citations omitted); *see also Merck*, 2010 U.S. Dist. LEXIS 29121, at *50-51.

Accordingly, and in light of the substantial benefits conferred on Exelis shareholders, Plaintiffs' Counsel are entitled to an award of reasonable fees and expenses.

## C. Negotiated Resolutions of Fee Issues Are Preferred and Should Be Upheld

The United States Supreme Court lauds the consensual resolution of attorneys' fee awards as the ideal toward which litigants should strive.  In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court stated that a "request for attorney's fees should not result in a second major litigation.  ***Ideally, of course, litigants will settle the amount of a fee.***"  *Id.* at 437 (emphasis added).  In representative litigation, it is widely recognized that fee agreements between plaintiffs and defendants are preferred.  *See, e.g.*, *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

Consistent with the foregoing precedents, the Parties negotiated the amount of fees and expenses that Exelis or its successors will pay to Plaintiffs' Counsel for their work on behalf of Exelis shareholders.  Oddo Decl., ¶47.  Specifically, Exelis and its successors agreed not to

oppose a fee and expense award in an amount up to $410,000. *Id.*; Stipulation, ¶15. That amount reflects a compromise reached through arm's-length bargaining by informed Parties. Importantly, the Parties began addressing the issue of attorneys' fees only after reaching agreement on all other terms and provisions of the Settlement. Oddo Decl., ¶48. Thus, the agreement to pay attorneys' fees and expenses did not reduce or otherwise affect the benefits to Exelis shareholders in any way.

Moreover, the Parties' negotiations were based upon a knowledgeable analysis of what an appropriate fee would be for the benefits achieved and the fees approved in similar situations. Plaintiff's Counsel negotiated with defense counsel, who saw the efforts made by Plaintiff's Counsel firsthand. Defense counsel have an interest in protecting their clients, who have a direct financial stake in the amount of the fees and expenses to be paid. Defendants are represented by highly-skilled lawyers, and do not need (and have not sought) protection from the Court for the results of their own negotiations regarding the amount of the fees and expenses to be paid. All counsel were able to consider and utilize as precedent fee decisions from similar actions. In such circumstances, the end result of those negotiations—which reflects all of the counsel's experience and views as to what is appropriate—is entitled to significant weight in considering Plaintiffs' Counsel's fee request. These factors clearly support an award to Plaintiffs' Counsel of the full amount negotiated by the Parties. *See, e.g.*, *Prandini v. Nat'l Tea Co.*, 557 F.2d 1015 (3d Cir. 1977) (absent evidence of collusion, a negotiated fee that does not diminish the amount of recovery by a class is entitled to substantial weight and deference.).

### D. The Requested Attorneys' Fee Award Is Reasonable Under a Lodestar Analysis

In setting the lodestar amount, the court "multipl[ies] the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate. Once this amount is

calculated, the district court may adjust the amount up or down to take into account various factors regarding the litigation." *See Mathur*, 317 F.3d at 742 (citations omitted). Applying their reasonable hourly rates,[11] Plaintiff's Counsel's collective lodestar is $359,041.00. *See* Oddo Decl., ¶51. After accounting for the expenses incurred, the proposed fee award of $410,000 reflects less than a 1.1 multiplier to the lodestar of $359,041.00. *See id.*

Given the contingent nature of Plaintiffs' Counsel's compensation, a premium over counsel's normal hourly rate is appropriate.[12] In awarding attorneys' fees to class counsel, it is

---

[11] The rates charged by Plaintiffs' Counsel are reasonable given their legal reputation, experience, and status. Oddo Decl., ¶52. Plaintiffs' Counsel are highly regarded firms that practice extensively in the complex and specialized field of shareholder litigation. Oddo Decl., Ex. 1, 2-A, 3-A, 4-A, 5-A, 6-A; *see Chrapliwy*, 670 F.2d at 768 (noting that attorneys with specialized skills in a narrow area of law tend to be found in large cities and charge more for performing services in this area of expertise than a general practitioner will charge for performing similar services). Thus, Plaintiffs' Counsel's rates are well within the range charged by attorneys with comparable experience. *See, e.g.*, *Abbott v. Lockheed Martin Corp.*, No. 06-cv-701, 2015 U.S. Dist. LEXIS 93206, at *11-12 (S.D. Ill. July 17, 2015) (finding the reasonable hourly rate for Class Counsel's services are as follows: for attorneys with at least 25 years of experience, $974 per hour; for attorneys with 15-24 years of experience, $826 per hour; for attorneys with 5-14 years of experience, $595 per hour; for attorneys with 2-4 years of experience, $447 per hour; for Paralegals and Law Clerks, $300 per hour; for Legal Assistants, $186 per hour).

[12] *See Hensley*, 461 U.S. at 448 (explaining that "[o]n many occasions awarding counsel fees that reflect the full market value of their time will require paying more than their customary hourly rates" and noting that contingency arrangements cause lawyers to bear the risk of non-recovery usually borne by clients in cases where lawyers are paid an hourly rate, and also cause lawyers to forfeit time value of money); *Dutchak v. Cent. States, Se. & Sw. Areas Pension Fund*, 932 F.2d 591, 595 (7th Cir. 1991) (noting that contingent litigation weighs heavily in favor of increasing the lodestar because "there were inherent uncertainties in pursuing the claim."); *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012) (noting that "once calculated, the lodestar amount may be adjusted"); *Ryan ex rel. Maxim Integrated Prods. v. Gifford*, C.A. No. 2213, 2009 Del. Ch. LEXIS 1, at *40 (Del. Ch. Jan. 2, 2009) (explaining that where shareholder plaintiffs' attorneys undertook the case on an entirely contingent basis and faced the possibility of receiving no consideration for their efforts if they were not successful in obtaining a recovery, "an attorney may be entitled to a much larger fee … than when [the attorney's compensation] is fixed on an hourly or contractual basis"); *In re Plains Res., Inc. S'holders Litig.*, C.A. No. 071-N, 2005 Del. Ch. LEXIS 12, at *22 (Del. Ch. Feb. 4, 2005) ("[P]laintiffs' counsel were all retained on a contingent fee basis, and stood to gain nothing unless the litigation was successful. It is

appropriate that "[o]nce the total number of hours and the hourly rate are calculated ... it is then necessary to consider if the lodestar rate should be increased." *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 326 (N.D. Ill. 1981).  The Court may increase the award by applying a "multiplier" to the lodestar amount if appropriate under the circumstances.  *See Reid v. Unilever U.S., Inc.*, 2015 U.S. Dist. LEXIS 75383, at *8-9 (N.D. Ill. June 10, 2015).  Multipliers are appropriate in "class-action cases, in which a multiplier may take the place of the contingent-fee contract that the lawyers for the class cannot negotiate because they are not actually retained by—they do not make a contract with—the members of the class." *Burdett v. Miller*, 957 F.2d 1375, 1384 (7th Cir. 1992).

The 1.1 multiplier requested here easily falls within the range of implied multipliers that have been found reasonable in other class actions that conferred similar benefits to the class.  *See Dutchak v. Cent. States, Se. & Sw. Areas Pension Fund*, 932 F.2d 591, 596 (7th Cir. 1991) (affirming a multiplier of 2 and noting that the "benefits [conferred upon]  thousands of [class members] are themselves a conclusive demonstration of the public good served by the litigation"); *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1207 (N.D. Ill. 1989) (holding that a multiplier of 1.75 "reasonably reflect[ed] the contingent nature of [the] litigation").

In short, the meaningful results and significant efforts expended in the Action establish that the agreed-upon fee and expense award of $410,000 is reasonable.

### E. Fees Awarded in Similar Cases Support the Fee Request

During negotiations over an appropriate fee amount for Plaintiffs' Counsel, the Parties were aware of the range of fees paid in other similar actions.  Courts have consistently recognized the value of disclosures in the context of corporate transactions like the instant case.

---

consistent with the public policy of Delaware to reward this risk-taking in the interests of shareholders.").

Indeed, courts within the Seventh Circuit and across the country have awarded plaintiffs' counsel fees and expenses consistent with or higher than the amount requested here in cases where the relief obtained was additional supplemental or curative disclosures. *See, e.g.*, *Collier v. Brightpoint, Inc.*, No. 1:12-cv-01016, 2013 U.S. Dist. LEXIS 62125, at *9 (S.D. Ind. May 1, 2013) (awarding $600,000 in fees and expenses for obtaining supplemental disclosures in the context of a merger transaction); *Nichting v. DPL, Inc.*, No. 3:11-cv-00141, slip op. (S.D. Ohio Feb. 24, 2012) (awarding $700,000 in fees and expenses for obtaining supplemental disclosures) (Oddo Decl., Ex. 10); *In re GeoEye, Inc., S'holder Litig.*, Consol. No. 1:12-cv-00826, slip op. (E.D. Va. Sept. 6, 2013) (awarding fees and expenses totaling $475,000 where sole benefit were supplemental disclosures) (Oddo Decl., Ex. 11); *Denney v. Wallace*, No. 2:10-cv-01154, slip op. (W.D. Pa. Sept. 9, 2011) (awarding $475,000 in fees and expenses for obtaining supplemental disclosures in the context of a merger) (Oddo Decl., Ex. 12); *Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co., Inc.*, No. C.A. 4066-VCN, slip op., ¶7 (Del. Ch. Aug. 31, 2009) ($950,000 for obtaining additional disclosures) (Oddo Decl., Ex. 13).

## VII.     CONCLUSION

Plaintiffs respectfully request that the Court enter the Order and Final Judgment, thereby finally approving the Settlement, finally certifying the Class for settlement purposes, and approving the Fee and Expense Award.

DATED:  January 19, 2016                              Respectfully submitted,

By: /s/  Stephen J. Oddo

**ROBBINS ARROYO LLP**
Brian J. Robbins
Stephen J. Oddo
600 B Street, Suite 1900
San Diego, CA 92101
Tel: (619) 525-3990
Fax: (619) 525-3991

*Attorneys for Plaintiff Jesse Mallinger and Lead Counsel*

**RILEY WILLIAMS & PIATT, LLC**
William N. Riley, Atty. No. 14941-49
James A. Piatt, Atty. No. 28320-49
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jpiatt@rwp-law.com
        wriley@rwp-law.com

*Attorneys for Plaintiffs William McGill and Jesse Mallinger and Liaison Counsel*

**OF COUNSEL**

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
Miles D. Schreiner
369 Lexington Ave., Tenth Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: jmonteverde@faruqilaw.com
        mschreiner@faruqilaw.com

*Attorneys for Plaintiff William McGill and Lead Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served by CM/ECF or electronic mail this 19th day of January, 2016 to the following, which includes all counsel of record:

Anne N. DePrez
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204-3535
Email: anne.deprez@btlaw.com

Robert S. Faxon
Adrienne Ferraro Mueller
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44114-1190
Email: rfaxon@jonesday.com
afmueller@jonesday.com

Richard A. Kempf
**TAFT STETTINIUS & HOLLISTER LLP**
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023
Email: rkempf@taftlaw.com

John L. Hardiman
Christen M. Martosella
**SULLIVAN & CROMWELL, LLP**
125 Broad Street
New York, NY 10004-2498
Email: hardimanj@sullcrom.com

Michael J. Palestina, Esq.
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, LA 70447
Email: Michael.Palestina@ksfcounsel.com

Brian D. Long
Gina M. Serra
**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Email: blong@rigrodskylong.com
gserra@rigrodskylong.com

Richard A. Maniskas
**RYAN & MANISKAS, LLP**
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Email: rmaniskas@rmclasslaw.com

Shannon L. Hopkins
Sebastiano Tornatore
**LEVI & KORSINSKY, LLP**
733 Summer Street, Suite 304
Stamford, CT 06901
Email: shopkins@zlk.com
stonatore@zlk.com

Kim E. Miller, Esq.
**KAHN SWICK & FOTI, LLC**
250 Park Avenue, Suite 2040
New York, NY 10177
Email: Kim.Miller@ksfcounsel.com

*/s/Stephen J. Oddo*

STEPHEN J. ODDO